**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **YUSEF MAISONET,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.  1:21-cv-59-KD-MU** |
| | ) | |
| **JEFFERSON S. DUNN, Commissioner,** | ) | |
| **Alabama Department of Corrections,** | ) | |
| **in his official and individual capacities,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF JEFFERSON S. DUNN,
<u>STEVE WATSON, THOMAS WOODFIN, TERRY RAYBON, AND CHRIS SUMMERS</u>**

Steve Marshall,
  *Attorney General*

Brad A. Chynoweth
  *Assistant Chief Deputy Attorney General*
A. Reid Harris
Morgan B. Shelton
  *Assistant Attorneys General*

State of Alabama
Office of Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Brad.Chynoweth@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Morgan.Shelton@AlabamaAG.gov

***Counsel for Defendants***

## Table of Contents

Introduction ....................................................................................................................... 1

Legal Standard ................................................................................................................... 1

Facts ................................................................................................................................... 3

    A.    Facts Related to Plaintiff ................................................................................. 3

    B.    The 2014 Execution Protocol and Domineque Ray's February 7, 2019 Execution ......................................................................................................... 4

    C.    *Murphy v. Collier* and the 2019 Execution Protocol ................................... 6

    D.    The 2019 Execution Protocol and Nathaniel Woods's March 5, 2020 Execution: Woods Raises No Religious Challenge to Plaintiff's Exclusion from the Execution Chamber ............................................................ 7

    E.    *Gutierrez v. Saenz* and Willie Smith's Challenge to the 2019 Execution Protocol ......................................................................................................... 8

Argument .......................................................................................................................... 11

    A.    Plaintiff Lacks Standing ................................................................................ 11

        1.    Plaintiff Lacks Standing Because He Improperly Asserts the Interests of the Inmates Condemned to Execution ............................. 11

        2.    Plaintiff Lacks Standing to Seek Declaratory and Injunctive Relief Because He Fails to Allege a Substantial Likelihood He Will Suffer a Similar Injury in the Future ........................................... 14

    B.    Defendants Are Entitled to Qualified Immunity from Suit from All of Plaintiff's Individual Capacity Federal Constitutional Claims. ...................... 17

    C.    Plaintiff's State Law Claims Under ARFA Are Barred by Eleventh Amendment Sovereign Immunity or Otherwise Fail to State a Claim .......... 23

Conclusion ....................................................................................................................... 26

CERTIFICATE OF SERVICE ......................................................................................... 28

## Introduction

Plaintiff Yusef Maisonet is an Imam who has served as a volunteer chaplain for Muslim inmates at the William C. Holman Correctional facility. Plaintiff has sued the Commissioner of the Alabama Department of Corrections ("ADOC") and other ADOC officials challenging the constitutionality of execution protocols that prevented him from entering the execution chamber to provide religious services to Domineque Ray and Nathaniel Woods during their executions in 2019 and 2020. However, Plaintiff lacks standing because he improperly seeks to assert the religious rights of the inmates condemned to death, and he has not alleged he will be subject to exclusion from the execution chamber in the future. Defendants are entitled to qualified immunity from suit for Plaintiff's money damages claims pursuant to 42 U.S.C. § 1983 based on their actions in 2019 and 2020. Plaintiff fails to carry his burden of alleging Defendants violated a right that was clearly established at the time—far from it. In fact, the Supreme Court of the United States recently granted certiorari to untangle the constitutional issues involved between balancing an inmate's request for a spiritual advisor in the execution chamber with prison officials' security interests in controlling access to the execution chamber. Plaintiff's State law claim under the Alabama Constitution of 1901 is barred by Eleventh Amendment sovereign immunity and fails to state a claim for money damages. As a result, all claims against Defendants should be dismissed.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Id.* (citing *Twombly*,

550 U.S. at 555–57). On a motion to dismiss, a court accepts the plaintiff's factual allegations as true. *Id.* at 678. "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). A facial attack on subject-matter jurisdiction under Rule 12(b)(1) applies essentially the same test employed for 12(b)(6) review. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

"[A]s early as possible," a district court should resolve "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367, 1367 n.35 (11th Cir. 1997). Such disputes "always present[] a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." *Id.* at 1367. The defense of qualified immunity is properly asserted in a Rule 12(b)(6) motion to dismiss because "it is an immunity from suit rather than a mere defense to liability" and "is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Cottrell v. Caldwell*, 85 F.3d 1480, 1487 (11th Cir. 1996) (internal quotation and citation omitted).

In addition to the pleadings, a court may consider judicially noticeable facts when reviewing a Rule 12 motion. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). Courts may judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* 201(c)(2). A court may take judicial notice of another court proceeding for the purpose of recognizing the judicial acts that the orders of the other court represent or the subject matter of the

litigation. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Courts may also take notice of matters central to plaintiffs' claims where authenticity cannot be challenged. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

## Facts

### A.    Facts Related to Plaintiff

Plaintiff is an Imam who has served as a volunteer Muslim Chaplain at the William C. Holman Correctional Facility in Atmore, Alabama ("Holman") since approximately 2014. Doc. 1 ¶¶ 1-2, 13. Plaintiff "provided religious ministry to Muslim incarcerees at [Holman] from 2014 to 2019," including to inmates condemned to death. *Id.* ¶ 34. In Alabama, all death row inmates are housed at Holman, and all executions take place at Holman. *Id.* ¶ 19; Ala. Code §§ 15-18-80; 15-18-81; 15-18-82(b).

Plaintiff alleges that, pursuant to execution protocols issued or enforced by Defendants, he was not allowed to accompany Domineque Ray into the execution chamber at Holman to recite the *shahadah* when Ray was executed on February 7, 2019. *Id.* ¶¶ 39-45. The *shahadah* is "the Islamic declaration of faith" that Muslims believe should be recited by a dying person who is able to speak. *Id.* ¶¶ 44, 46. Plaintiff alleges he was likewise unable to accompany Nathaniel Woods into the execution chamber when Woods was executed on March 5, 2020. *Id.* ¶¶ 48-50. Plaintiff alleges he "remains committed to providing religious support and guidance to the Muslims on Alabama's death row" and that Defendants "will continue to enforce a policy of excluding religious advisers—including Imam Maisonet—from the execution chamber" "absent relief from this Court." *Id.* ¶¶ 53, 56.

**B.** **The 2014 Execution Protocol and Domineque Ray's February 7, 2019 Execution**

Alabama law provides that "spiritual advisors" are among those who "shall be admitted to see and converse" with inmates condemned to death "under such reasonable rules and regulations as may be made by the Board of Corrections." Ala. Code § 15-18-81. Alabama law also includes "[t]he spiritual advisor of the condemned" among those persons "who may be present at an execution." Ala. Code § 15-18-83. The statutes were further implemented by Alabama Department of Corrections' protocols, including, relevant to this lawsuit, a 2014 Execution Protocol that was in effect when Ray was executed on February 7, 2019. Doc. 1 ¶¶ 21, 29.

Under the 2014 Execution Protocol, the Facility Chaplain, Defendant Chris Summers, remained in the execution chamber when the inmate was executed. Doc. 1 ¶¶ 21-23. Defendant Summers has been the only Facility Chaplain employed at Holman since 1997 and is a mainline Protestant Christian. *Id.* ¶ 22. For those inmates who requested it, Defendant Summers would kneel and pray with inmates inside the execution chamber. *Id.* ¶¶ 24-25.[1] While religious volunteers who were not ADOC employees could provide religious services to inmates at Holman, only the chaplain of Holman, Defendant Summers, was allowed inside the execution chamber. *Id.* ¶¶ 29-34.[2]

Ray was sentenced to death after he robbed, raped, and murdered fifteen-year-old Tiffany Harville. *See Ray v. State*, 809 So. 2d 875, 879-80 (Ala. Crim. App. 2001). Plaintiff provided

---

[1] The Eleventh Circuit's order granting a stay of Ray's execution noted, "If the inmate does not want pastoral care from Chaplain Summers, he will remain in the execution chamber standing unobtrusively by the wall." *Ray v. Comm'r, Ala. Dep't of Corrs.*, 915 F.3d 689, 692-93 (11th Cir. 2019).

[2] However, private spiritual advisors of any faith could be present at the execution pursuant to Alabama Code § 15-18-83. *See Ray*, 915 F.3d at 693 ("The inmate's designated witnesses, limited to six, along with any spiritual advisor other than Chaplain Summers, may be seated in a witness room, separated from the death chamber by a large window.").

spiritual guidance to Ray for five years prior to Ray's execution in 2019. Doc. 1 ¶ 35. After Defendants denied Plaintiff the ability to accompany Ray into the execution chamber on January 23, 2019, Ray filed suit in the Middle District of Alabama on January 28, 2019—ten days before his execution date. *Id.* ¶¶ 36, 39.

Ray sought a stay of execution on the grounds that ADOC's policy violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, and the Establishment Clause of the First Amendment. *See Ray v. Dunn*, 2:19-cv-88-WKW, 2019 WL 418105, at *3 (M.D. Ala. Feb. 1, 2019). After Ray filed suit, ADOC agreed to exclude Defendant Summers from the execution chamber but denied Ray's request that Plaintiff be allowed in the execution chamber. *Id.*; *see also Ray*, 915 F.3d at 694. Ray conceded, *Ray* 2019 WL 418105 at *6, and the district court found, that the exclusion of Defendant Summers from the execution chamber mooted Ray's Establishment Clause challenge and denied the motion to stay based on the RLUIPA claim on the merits and on grounds of undue delay. *Ray*, 2019 WL 418105, at *6 n.6; 4-7; Doc. 1 ¶ 37.

The Eleventh Circuit reversed and granted a stay. *See Ray*, 915 F.3d at 703. Even though Ray stated in the district court his Establishment Clause claim would be moot if Defendant Summers was excluded from the execution chamber, *Ray*, 2019 WL 418105, at *6, he changed course on appeal and the court found he was substantially likely to succeed on both his Establishment Clause and RLUIPA claims. *Id.*, 915 F.3d at 695-703. The court construed Ray's challenge as a denominational preference claim since, if Ray had been Christian, he would have received the benefit of Defendant Summers's presence in the execution chamber. *Id.* at 700.

The Supreme Court of the United States disagreed and vacated the Eleventh Circuit's stay of execution on February 7, 2019. *See Dunn v. Ray*, 139 S. Ct. 661, 661 (2019). Ray's

Establishment Clause and RLUIPA claims never resulted in a judgment on the merits because his February 7, 2019 execution mooted his claims. *See Ray v. Dunn*, 2:19-cv-88-WKW, 2019 WL 10271164, at *2 (M.D. Ala. Apr. 15, 2019).

**C.     *Murphy v. Collier* and the 2019 Execution Protocol**

On March 28, 2019, the United States Supreme Court granted a stay of a Texas execution in *Murphy v. Collier*, 139 S. Ct. 1475 (2019). Murphy was a Buddhist who challenged a Texas procedure under which only religious clerics who are employees of the Texas Department of Criminal Justice ("TDCJ") could be present in the execution chamber at the time of execution. *Murphy v. Collier*, 919 F.3d 913, 914 (5th Cir. 2019). The TDCJ employed Christian and Muslim chaplains but no Buddhist chaplains. *Id.* As a result, Murphy's Buddhist spiritual advisor could not accompany him into the execution chamber.

In a concurrence, Justice Kavanaugh stated he viewed Murphy's claim as one for unequal treatment based on a particular religious denomination. *See Murphy*, 139 S. Ct. at 1475 (Kavanaugh, J., concurring in grant of application for stay). However, Justice Kavanaugh went on to note that States could remedy the unequal treatment by removing *all* spiritual advisors from the execution chamber:

> In an equal-treatment case of this kind, the government ordinarily has its choice of remedy, so long as the remedy ensures equal treatment going forward. For this kind of claim, there would be at least two possible equal-treatment remedies available to the State going forward: (1) allow all inmates to have a religious adviser of their religion in the execution room; or (2) *allow inmates to have a religious adviser, including any state-employed chaplain, only in the viewing room, not the execution room.* A State may choose a remedy in which it would allow religious advisers only into the viewing room and not the execution room because there are operational and security issues associated with an execution by lethal injection. Things can go wrong and sometimes do go wrong in executions, as they can go wrong and sometimes do go wrong in medical procedures. States therefore have a strong interest in tightly

6

> controlling access to an execution room in order to ensure that the execution occurs without any complications, distractions, or disruptions. The solution to that concern would be to allow religious advisers only into the viewing room. *In any event, the choice of remedy going forward is up to the State*.

*Id.* (citation omitted) (emphasis added).

On May 13, 2019, Justice Alito, joined by Justices Thomas and Gorsuch, issued a dissent in which he argued the Court's last-minute stay was inconsistent with its denial of Ray's motion to stay. *Id.* at 1478-85 (Alito, J., dissenting from grant of stay application). Justice Kavanaugh responded with three reasons for why there was no inconsistency. *Id.* at 1476-78 (Kavanaugh, J., statement respecting grant of application for stay). First, "Ray did not raise an equal-treatment claim" but rather "an Establishment Clause claim to have the State's Christian chaplain removed from the execution room." *Id.* at 1476. Second, "in response to the Eleventh Circuit's stay in Ray's case, Alabama indicated to this Court that an equal-treatment problem, if there were one, would typically be remedied by removing ministers of all religions from the execution room (as Texas has now done)." *Id.* at 1477. Third, Ray had unduly delayed his motion to stay whereas Murphy had not. *Id.* Justice Kavanaugh stated that Texas's exclusion of all spiritual advisors from the execution chamber "solves the equal-treatment constitutional issue," and "likely passes muster" under RLUIPA *and* the Free Exercise Clause. *Id.* at 1476.

**D.     The 2019 Execution Protocol and Nathaniel Woods's March 5, 2020 Execution: Woods Raises No Religious Challenge to Plaintiff's Exclusion from the Execution Chamber**

The State of Alabama had already expressed its intent to remove all spiritual advisors from the execution chamber when it sought to vacate the stay of Ray's execution. *See Murphy*, 139 S. Ct. at 1477 (Kavanaugh, J., statement respecting grant of application for stay). As Plaintiff alleges, "Subsequent to Dominique [sic] Ray's execution, Defendants changed their execution chamber

policy to exclude all religious advisors, including Facility Chaplain Summers, from the execution chamber." Doc. 1 ¶ 7; *see also id.* ¶ 49. As Plaintiff further alleges, "Defendants relied upon the 2019 Execution Protocol to deny Imam Maisonet the ability to accompany Nathaniel Woods to the execution chamber on March 5, 2020, where Mr. Woods was executed that day." *Id.* ¶ 50.

In seeking a stay of execution, *Woods himself never raised a religious challenge* to Defendants' policy of treating all denominations equally by excluding all spiritual advisors from the execution chamber. *See Woods v. Comm'r, Ala. Dept. of Corrs.*, 951 F.3d 1288, 1290-92 (11th Cir. 2020) (denying motion to stay execution based on Eighth and Fourteenth Amendment challenges to method of execution); *Woods v. Dunn*, 140 S. Ct. 1290 (2020) (denying application for stay of execution). Woods was executed on March 5, 2020. Doc. 1 ¶¶ 8, 50.

E.    *Gutierrez v. Saenz* **and Willie Smith's Challenge to the 2019 Execution Protocol**

After Texas chose to exclude all spiritual advisors from the execution chamber in response to *Murphy*, Texas inmate Ruben Gutierrez, a Catholic, challenged the exclusion of his spiritual advisor from the execution chamber on Establishment Clause, Free Exercise, and RLUIPA grounds. *See Gutierrez v. Saenz*, 818 F. App'x 309, 313 (5th Cir. 2020). The Fifth Circuit Court of Appeals vacated the lower court's stay of execution and held Gutierrez was unlikely to succeed on the merits of any of these claims. *Id.* at 313-14. It held that the "reasonableness" standard for prison regulations that impinge an inmate's constitutional rights, rather than strict scrutiny, applied to the Establishment and Free Exercise Clause claims. *See Id.* at 313 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). The court concluded the TDCJ reasonably relied on Justice Kavanaugh's concurrence in *Murphy* in adopting the challenged policy of excluding all spiritual advisors from the execution chamber. *Id.* at 314 ("One justice's views are not precedent, but we conclude that the concurring opinion made a valid appraisal of the issue.").

8

However, on January 25, 2021, the Supreme Court of the United States granted Gutierrez's petition for writ of certiorari and vacated the Fifth Circuit's order granting the motion to vacate the stay of his execution. *Gutierrez v. Saenz*, No. 19-8695, 2021 WL 231538, __ S. Ct. __ (Jan. 25, 2021). The Court remanded the case to the Fifth Circuit with instructions to remand the cause to the district court for further and prompt consideration of the merits of Gutierrez's underlying claims regarding the presence of a spiritual advisor in the execution chamber. *Id.*

Meanwhile, Willie B. Smith, III, an Alabama inmate scheduled for execution at Holman, filed suit challenging the exclusion of his Christian minister from the execution chamber under the 2019 Execution Protocol. *See Smith v. Dunn*, 2:20-cv-1026-RAH, 2021 WL 358374 (M.D. Ala. Feb. 2, 2021), *reversed by Smith v. Dunn*, No. 21-10348, 2021 WL 490283, __ F. App'x __ (11th Cir. Feb. 10, 2021); *Dunn v. Smith*, 141 S. Ct. 725 (2021) (denying application to vacate injunction). With his execution scheduled for February 11, 2021, Smith moved for a preliminary injunction under RLUIPA, the Establishment and Free Exercise Clauses, and ARFA. *Smith*, 2021 WL 358374, at *1. Smith requested an injunction ordering Defendant Dunn to allow Smith's pastor to be present with him in the execution chamber and in physical contact with him at the moment of his death. *Id.*

The district court found Smith failed to show a substantial likelihood of success on his RLUIPA claim because the 2019 Execution Protocol failed to substantially burden Smith's religion and, even if it did, the policy satisfied strict scrutiny. *Id.* at *6-14. The court applied the test from *Lemon v. Kurtzman*, 403 U.S. 602 (1971), to Smith's Establishment Clause claim and granted ADOC a Rule 12(b)(6) dismissal. *Id.* at *14-17. The court applied the "reasonableness" standard from *Turner* for prison regulations to conclude Smith was unlikely to succeed on the merits of his free exercise claim. *Id.* at *17-19. Finally, the court concluded the 2019 Execution

Protocol triggered strict scrutiny under ARFA, but that the policy was narrowly tailored to ADOC's compelling interests in maintaining security and vetting execution team members. *Id.* at *19-21.

However, the Eleventh Circuit reversed the district court's denial of Smith's request for injunctive relief on Smith's RLUIPA and ARFA claims. *See Smith*, 2021 WL 490283, at *1-2. The Court analyzed only the RLUIPA claim in its opinion and held the 2019 Execution Protocol was not narrowly tailored to ADOC's compelling interests. *Id.* at *4-6. One judge dissented on the grounds that the district court did not commit an abuse of discretion. *Id.* at *7-8 (Jordan, J., dissenting).

The United States Supreme Court denied ADOC's application to vacate the Eleventh Circuit's order to grant Smith injunctive relief. *Smith*, 141 S. Ct. 725. Justice Kagan stated in a concurrence that the 2019 Execution Protocol substantially burdened Smith's exercise of religion under RLUIPA, and that the exclusion of all spiritual advisors from the execution chamber likely could not satisfy strict scrutiny. *See Smith*, 141 S. Ct. at 725-26 (Kagan, J., concurring in denial of application to vacate injunction).

Justice Kavanaugh issued a dissent in which he referenced his *Murphy* concurrence. *Id.* at 726-27 (Kavanaugh, J., dissenting from denial of application to vacate injunction) ("Because the State's policy is non-discriminatory and, in my view, serves the State's compelling interests in ensuring the safety, security, and solemnity of the execution room, I would have granted the State's application to vacate the injunction."). However, Justice Kavanaugh also acknowledged "the Court has a different view" and that "[g]iven the stays of execution here and in *Gutierrez* . . ., it seems apparent that States that want to avoid months or years of litigation delays because of this RLUIPA

issue should figure out a way to allow spiritual advisors into the execution room, as other States and the Federal Government have done." *Id.*

The issue of whether an inmate has a right to a spiritual advisor in the execution chamber under either RLUIPA, the Establishment Clause, or the Free Exercise Clause, remains unsettled and awaits ultimate resolution from the United States Supreme Court when *Gutierrez* returns to it after the lower courts conduct the required analysis.

**Argument**

Nevertheless, Plaintiff files suit against Defendants here alleging they violated his clearly established rights to be present at Ray and Woods's executions in 2019 and 2020. But as the above procedural history makes clear, these rights are anything but clearly established as to the inmates who assert them. And it is even less clear whether a spiritual advisor, such as Plaintiff, may assert such rights. Because Plaintiff fails to carry his burden of alleging a violation of clearly established law, Defendants are entitled to qualified immunity from suit as to all claims for money damages. However, before the Court can address the defense of qualified immunity, Plaintiff must overcome several significant jurisdictional obstacles, including a lack of standing. *See Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) ("Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting."). Because Plaintiff—in Imam, not an inmate—cannot properly challenge the State's execution protocol, and because Plaintiff has not alleged facts to show an imminent threat of future harm, Plaintiff lacks standing and the Complaint is due to be dismissed for lack of subject-matter jurisdiction.

**A.     Plaintiff Lacks Standing**

**1.     Plaintiff Lacks Standing Because He Improperly Asserts the Interests of the Inmates Condemned to Execution**

11

"To establish standing, a litigant ordinarily must assert his own legal rights and interests and cannot assert the rights or interests of someone else." *U.S. S.E.C. v. Quest Energy Management Group, Inc.*, 768 F.3d 1106, 1108–09 (11th Cir.2014) (citations and quotation marks omitted). "Because standing is not dispensed in gross, what matters is whether the plaintiff has suffered a concrete injury, not whether other parties have." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1001 (11th Cir. 2020) (citations and quotation marks omitted). Constitutional standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). There are three elements necessary to establish standing: (1) the plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely that the injury be redressed by a favorable decision. *Id.* at 560–61; *see also Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1213–14 (11th Cir. 2019).

Plaintiff has not suffered any legally cognizable injury in fact that could support Article III standing. A claim to redress any alleged constitutional injury could only be properly brought by an inmate; Plaintiff has no constitutional right to minister to inmates in prison. *See O'Malley v. Brierley*, 477 F.2d 785, 793 (3d Cir. 1973) ("[T]here is no principle in the law granting to clerics an absolute right to enter a prison, and Fathers O'Malley and Taylor have no constitutional right to enter Western Penitentiary. . . . It must unalterably follow that the state cannot be charged with denying that which does not exist."); *McCollum v. State of California*, No. C 04-03339 CRB, 2006 WL 2263912, at *3 (N.D. Cal. Aug. 8, 2006) ("The CDC's alleged refusal to allow McCollum to minister to the Wiccan inmates may burden the inmates' free exercise rights, but it does not burden McCollum's rights."), *aff'd sub nom. McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870 (9th Cir. 2011). The relevant question for the Court is not only whether a constitutional

12

violation occurred; the question is whether Defendants have violated any constitutional right of Plaintiff. Because they have not, Plaintiff lacks standing and the Complaint is due to be dismissed.

Further, even if the Court finds that Plaintiff could satisfy the minimum constitutional requirements of standing, the Court should decline to exercise jurisdiction under the doctrine of third-party standing. "In addition to the three constitutional standing requirements, 'the Supreme Court has held that prudential requirements pose additional limitations on standing.'" *United States v. Blake*, 868 F.3d 960, 969 (11th Cir. 2017) (quoting *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003)). "One of those prudential limitations is the rule that a litigant 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

To demonstrate third party standing, a plaintiff must show (1) his own injury, (2) a close relationship between himself and the parties whose rights he asserts, and (3) the inability of the parties to assert their own rights. *Powers*, 499 U.S. at 409–10. Even if Plaintiff could satisfy the first two prongs of this inquiry, Plaintiff's claim plainly falters on the third essential requirement because the parties whose rights he asserts—inmates who were allegedly denied the right to be executed in the same room as their spiritual advisor—were more than capable of asserting their own rights. Each inmate about whom Plaintiff makes allegations had their own legal counsel and pressed their own legal claims related to their execution. Indeed, Plaintiff cites in his Complaint the United States Supreme Court's rejection of one such claim. Doc. 1 ¶¶ 36–38; *see Dunn v. Ray*, 139 S. Ct. 661, 203 L. Ed. 2d 145 (2019); *see also Woods v. Dunn*, 140 S. Ct. 1290 (2020).

The Ninth Circuit affirmed a district court's refusal to exercise jurisdiction under similar circumstances. *McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870 (9th Cir. 2011). In *McCollum*, the California prison system employed full-time chaplains that were members of

various religious faiths, though it did not employ any Wiccan chaplain. *Id.* at 874–75. A Wiccan volunteer chaplain who sought to become a full-time chaplain filed suit, alleging that the defendants' policy violated his rights under the Free Exercise Clause and Establishment Clause. *Id.* at 877. The plaintiff alleged that defendants violated his own rights "by deliberately impeding his access . . . to his prison congregation." *Id.* at 879. Nevertheless, the Court held that even though the minister alleged in his complaint a violation of his own rights, "[h]is claim, at bottom, asserts not his own rights, but those of third party inmates." *Id.* The court explained that his "right to minister to Wiccan inmates is derivative of the inmates' rights to have access to a minister of their faith[.]" *Id.* And, because the plaintiff could not show the inability of the inmates to assert their own rights, the plaintiff's claim was due to be dismissed. *Id.* at 879–880.

As the plaintiff in *McCollum*, Plaintiff purports to allege a violation of his own First Amendment rights based on the allegation that he cannot minister to certain inmates in accordance with his faith. As the chaplain in *McCollum*, Plaintiff's rights are derivative of First Amendment rights held by third-party inmates—without inmates seeking Plaintiff's religious guidance, Plaintiff could not have a claim at all. And, as in *McCollum*, the third parties could assert their own rights—in fact, they did so in appeals all the way to the United States Supreme Court. "It is the inmates, not [Plaintiff Maisonet], who have standing to pursue the primary claim [Plaintiff Maisonet] articulate[s]." *Id.* at 879. Accordingly, Plaintiff cannot satisfy the requirements for third-party standing and this case is due to be dismissed.

### 2. Plaintiff Lacks Standing to Seek Declaratory and Injunctive Relief Because He Fails to Allege a Substantial Likelihood He Will Suffer a Similar Injury in the Future

First, to the extent Plaintiff seeks injunctive relief or declaratory judgment for past conduct based on past requirements, he lacks standing to support such a claim. "Past exposure to illegal

conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 110 (1998) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)); *see also Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir. 1999) ("[A] declaration that the [challenged] statute as applied in the past to these plaintiffs is unconstitutional would [be] nothing more than a gratuitous comment without any force or effect.") (internal quotations omitted). Put differently, allegations based on only past conduct cannot demonstrate a concrete or imminent injury sufficient to establish standing. *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that previously being subjected to illegal chokehold by police did not establish real and immediate threat of future injury that was required to establish standing for injunctive relief). Further, there are no exceptions to Plaintiff's burden to show that standing exists. *Friends of the Earth Inc. v. Laidlaw Env't'l Servs.*, 528 U.S. 167, 191 (2000). Although mootness contains an exception for cases that are capable of repetition yet evading review, "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Id.* (citing *Steel Co.*, 523 U.S. at 109). Accordingly, any claim for declaratory or injunctive relief premised on past conduct is due to be dismissed for lack of standing.[3]

---

[3]    Similarly, claims for injunctive relief premised on past conduct are barred by sovereign immunity. *Ex parte Young*'s narrow exception to sovereign immunity allows for only prospective injunctive relief premised only on "ongoing and continuous violations of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) (citing *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986)). "In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.*

Second, Plaintiff lacks standing even for prospective injunctive relief. Where, as here, "a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney*, 193 F.3d at 1346 (citing *Lyons*, 461 U.S. at 102). To survive dismissal, the plaintiff must show "a real and immediate threat of future harm." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (citing *Lyons*, 461 U.S. at 105). "[E]ven at the pleading stage, the 'litigant must clearly and specifically set forth facts' to satisfy the requirements of Article III." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924–25 (11th Cir. 2020) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Lyons*, 461 U.S. at 102 (internal alterations incorporated and citation omitted). Even where the Eleventh Circuit has "found a sufficient imminence of future harm based on a past injury, the plaintiff has alleged with particularity that a future injury would likely occur in substantially the same manner as the previous injury." *Elend*, 471 F.3d at 1208.

Here, Plaintiff's Complaint is wholly lacking any allegation related to a threat of future injury. The closest the Complaint comes to pleading a threat of future injury is the bald allegation that "ADOC will continue to enforce a policy of excluding religious advisors—including Imam Maisonet—from the execution chamber." Doc. 1 ¶ 56. There is no allegation, for example, that Plaintiff plans to attend a specific execution or that any inmate desires to have Plaintiff attend an execution. Plaintiff has not "specifically set forth facts" that show a real and immediate threat of future injury. *Muransky*, 979 F.3d at 924. He certainly has not done so "with particularity." *Elend*, 471 F.3d at 1208. Accordingly, Plaintiff has not pleaded facts that could establish standing for declaratory or prospective injunctive relief, and any claim seeking such relief is due to be dismissed.

**B.      Defendants Are Entitled to Qualified Immunity from Suit from All of Plaintiff's Individual Capacity Federal Constitutional Claims.**

Plaintiff sues all Defendants in their individual capacities alleging his exclusion from the execution chamber during Ray and Woods's executions violated his rights under the Establishment and Free Exercise Clauses of the First Amendment. Doc.1 ¶¶ 57-84. Plaintiff seeks a declaratory judgment that these past actions violated his constitutional rights and an award of "[n]ominal or other damages" pursuant to 42 U.S.C. § 1983. *Id.* at 19. But because Plaintiff fails to carry his burden of alleging Defendants violated a clearly established right, Defendants are entitled to qualified immunity from suit.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (brackets and internal quotations omitted). While clearly established law does "not require a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

The applicability of qualified immunity depends on whether an official "was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks and citation omitted). "A government official acts within her discretionary authority if the actions were (1) undertaken

17

pursuant to the performance of [her] duties and (2) within the scope of [her] authority." *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (alterations in original). "[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).

Here, Plaintiff does not dispute Defendants were acting within the scope of their discretionary authority. Plaintiff alleges Defendants had authority to formulate, amend, implement, or enforce policies regarding whether spiritual advisors can enter the execution chamber. Doc. 1 ¶¶ 14-18; *see also* Alabama Code §§ 15-18-81, -83. Plaintiff alleges his injuries occurred as a result of Defendants creating, enforcing, or refusing to alter policies within the scope of their authority, namely, the 2014 and 2019 Execution Protocols in effect at the time of Ray and Woods's executions. *Id.* ¶¶ 43, 50.

"Once the defendant establishes that he was acting within his discretionary authority, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. Plaintiff bears the burden of making plausible factual allegations "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (quotation marks and citation omitted). In analyzing qualified immunity, "courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, because the Supreme Court has granted certiorari in *Gutierrez* to decide whether there is a constitutional right to a spiritual advisor in the execution chamber, the constitutional violations Plaintiff alleges are plainly an open question. Defendants thus focus their argument on the clearly established prong of qualified immunity.

18

There are three ways to prove that a particular constitutional right is clearly established. First, "a plaintiff can show that a materially similar case has already been decided." *Waldron v. Spicher*, 954 F.3d 1297, 1304 (11th Cir. 2020). The similar case must consist of "binding precedent tied to particularized facts in a materially similar case" from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Supreme Court of Alabama. *Id.* at 1304-05. Second, "a plaintiff can also show that a broader, clearly established principle should control the novel facts of a particular case." *Id.* at 1305. But this applies only where the principle is "established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* (internal quotation and citation omitted). Third, "a plaintiff could show that the case fits within the exception of conduct which so obviously violates [the] Constitution that prior case law is unnecessary." *Id.* But this "third test is a narrow category encompassing those situations where the official's conduct lies so very obviously at the very core of what the relevant [constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding lack of case law." *Id.*

First, Defendants begin with a formulation of the right Plaintiff seeks to assert. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("[T]he clearly established right must be defined with specificity."); *see also Sheehan*, 575 U.S. 600, 135 S Ct. at 1775-76 (stating the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality.") (quoting *al-Kidd*, 563 U.S. at 742). Second, Plaintiff must allege a violation of law that was clearly established at the time. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."). Plaintiff

challenges Defendants' conduct that occurred on February 7, 2019, and on March 5, 2020, when Ray and Woods were executed. Doc. 1 ¶¶ 39, 43, 50.

Plaintiff alleges Defendants' 2014 Execution Protocol violated the Establishment Clause by creating a "denominational preference . . . when they preferred and required the presence of the [Holman] Facility Chaplain, a mainline Protestant Christian, and prohibited Imam Maisonet from joining Dominique [sic] Ray in the execution chamber in his stead." Doc. 1 ¶ 62, 79. Plaintiff alleges Defendants again violated the Establishment Clause when they executed Woods, but he does not allege how the 2019 Execution Protocol, which excluded all spiritual advisors from the execution chamber, created a denominational preference. *Id.* ¶¶ 68-71. Plaintiff alleges Defendants violated his free exercise rights by not allowing him into the execution chamber for Ray's execution, and again in 2020 pursuant to their policy of excluding all spiritual advisors from the execution chamber. *Id.* ¶¶ 76-83. He seeks recognition by injunction of the following right: that "Imam Maisonet and other religious leaders . . . remain in the execution chamber when requested by a member of the leader's faith, subject only to an ADOC security clearance, which shall not be unreasonably withheld." *Id.* at 19.

As an initial matter, these rights were not clearly established at the time of the challenged conduct under the second or third methods for clearly establishing law for cases of "obvious clarity." *See Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) ("Cases do not often arise under the second and third methods."). This is especially clear when Defendants' alleged conduct is viewed in context. *See Brosseau*, 543 U.S. at 599 ("It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'") (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Plaintiff had provided spiritual guidance to Ray for five years prior to his execution. Doc. 1 ¶ 35. On November 6, 2018, the

Supreme Court of Alabama set Ray's execution for February 7, 2019. *Ray*, 2019 WL 418105, at *2. Yet, Ray did not request that Plaintiff be present at his execution until January 23, 2019 and waited until January 28, 2019—ten days before his execution—to file suit. *Ray*, 915 F.3d at 693. ADOC responded to Ray's objection to Defendant Summers's presence in the execution chamber by removing him, a response that Ray conceded mooted his Establishment Clause challenge. *Ray*, 2019 WL 418105, at *6. Thus, under the circumstances, Plaintiff alleges Defendants violated his Establishment Clause and Free Exercise rights by not arranging for Plaintiff to enter the execution chamber *when they received notice of his desire to do so only two weeks before the scheduled execution*. Defendants did not commit an "obvious" violation of clearly established law by not scrambling to alter their 2014 Execution Protocol two weeks before an execution *and* after removing Defendant Summers from the execution chamber. Nor did they commit an "obvious" violation of law when they adopted the 2019 Execution Protocol to remove all spiritual advisors from the execution chamber—a method that was expressly encouraged by one Supreme Court justice in *Murphy* after Ray's execution but before Woods's. *See Murphy*, 139 S. Ct. 1475 (Kavanaugh, J., concurring in grant of application for stay).

Since this is not an "obvious clarity" case, Plaintiff bears the burden of identifying a "materially similar" case of binding precedent existing at the time of Defendants' conduct that demonstrates their actions violated the Establishment and Free Exercise Clauses. *See Gaines*, 871 F.3d at 1209-10. As the uncertainty of the law surrounding this matter clearly shows, Plaintiff cannot carry this burden. For starters, the Supreme Court of the United States allowed Ray's execution to take place on February 7, 2019, notwithstanding the Eleventh Circuit's identification of a "denominational preference" challenge to Plaintiff's exclusion from the execution chamber. *See Dunn v. Ray*, 139 S. Ct. at 661; *Ray*, 915 F.3d at 699-700. In *Murphy*, Justice Kavanaugh noted

21

the likely constitutionality of the 2019 Execution Protocol's exclusion of all spiritual advisors from the execution chamber, which was in effect when Woods was executed on March 5, 2020. *See Murphy*, 139 S. Ct. at 1475 (Kavanaugh, J., concurring in grant of application for stay). Three judges of the Fifth Circuit Court of Appeals concluded Texas reasonably relied on Justice Kavanaugh's concurrence in adopting an identical policy. *See Gutierrez*, 818 F. App'x at 314 ("One justice's views are not precedent, but we conclude that the concurring opinion made a valid appraisal of the issue."). While the Supreme Court's orders granting stays of execution in *Gutierrez* and *Smith* indicate the Court may conclude the Constitution requires States to allow spiritual advisors in the execution chambers, these orders are non-precedential and incapable of clearly establishing law. *See Schwab v. Sec'y, Dep't of Corrs.*, 507 F.3d 1297, 1301 (11th Cir. 2007) ("Orders granting stays are not precedential decisions.").

Furthermore, the rights asserted by the inmates in *Gutierrez* and *Smith* are not the same rights asserted by Plaintiff. First, these inmates asserted *their* rights to have a spiritual advisor present in the execution chamber at the time of their death, which is a much stronger interest than Plaintiff's interest in providing religious services. Indeed, as set forth above, Plaintiff lacks standing even to assert such rights. Second, Ray, Gutierrez, and Smith, all brought challenges under RLUIPA in addition to the Establishment and Free Exercise Clauses. RLUIPA is more protective of inmate's religious rights than an ordinary free exercise challenge, which "does not shield religiously motivated conduct from the burdens of generally applicable laws." *Knight v. Thompson*, 797 F.3d 934, 942-43 (11th Cir. 2015) (explaining RLUIPA's enactment as a response to *Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872 (1990)). If it is not clearly established that RLUIPA requires spiritual advisors in the execution chamber, then it is certainly not established that the Establishment and Free Exercise Clauses require this.

22

In sum, the state of the law in this area is clearly undeveloped and in flux. That is why the Supreme Court granted certiorari in *Gutierrez*. Defendants cannot be held liable for failing to anticipate what *Gutierrez* will hold when they did not allow Plaintiff into the execution chamber on February 7, 2019, and March 5, 2020. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.") (internal quotation and citation omitted). Since Plaintiff fails to carry his burden of alleging a violation of clearly established law, Defendants are entitled to qualified immunity from suit.

**C.     Plaintiff's State Law Claims Under ARFA Are Barred by Eleventh Amendment Sovereign Immunity or Otherwise Fail to State a Claim**

First, Plaintiff's claims under ARFA should be dismissed for lack of subject matter jurisdiction because they are barred by Eleventh Amendment sovereign immunity. Plaintiff's claims for declaratory and injunctive relief under ARFA fail because this Court lacks jurisdiction to instruct Alabama officials how to conform to Alabama law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). The States enjoy immunity from private suits as a "fundamental aspect" of their sovereignty. *Alden v. Maine*, 527 U.S. 706, 713 (1999). As part of the sovereign immunity bar, federal courts lack jurisdiction to hear claims against state officials for alleged violations of State law. *Pennhurst*, 465 U.S. at 121. A claim that State officials violated State law in carrying out their official responsibilities is a claim against the State that is barred by the Eleventh Amendment regardless of whether this Court has jurisdiction over any of Plaintiff's other claims and "regardless of whether it seeks damages or injunctive relief." *Id.* at 102, 121. Thus, to the extent Plaintiff seeks money damages in his claim brought under ARFA, the *Pennhurst* bar applies equally to claims for money damages. *See Garrett v. Talladega Cnty Drug & Violent*

*Crime Task Force*, 983 F. Supp. 2d 1369, 1375-77 (N.D. Ala. 2013) (citing *Pennhurst*, 465 U.S. at 102); *Ex parte Bentley*, 116 So. 3d 201, 205 (Ala. 2012) (Parker, C.J., concurring specially) (citing P*ennhurst*, 465, U.S. at 102). *See also In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 786 (6th Cir. 2017) (Sutton, J., concurring). Because the Court lacks jurisdiction to consider Plaintiff's claims against Alabama officials premised on alleged violations of Alabama law, that claim is due to be dismissed.

Second, Plaintiff fails to state a claim for money damages under ARFA because the Alabama Constitution of 1901 does not create a private right of action to sue for money damages. *See Matthews v. Alabama Agric & Mech. Univ.*, 787 So. 2d 691, 698 (Ala. 2000) ("However, Matthews presented no authority to the trial court, and he has presented no authority to this Court, that recognizes a private cause of action for monetary damages based on violations of the provisions of the Constitution of Alabama of 1901, and we have found none."); *see also Robinson v. Ash*, 374 F. Supp. 3d 1171, 1186–87 (M.D. Ala. 2019) ("Like under § 1983, a claim against a state official in his official capacity is really a claim against the state itself. *Ex parte Butts*, 775 So. 2d 173, 177 (Ala. 2000). . . . Claims for money damages against the state, state agencies, and state officials being sued in the official capacities are absolutely barred. *Ex parte Lawley*, 38 So. 3d 41, 45 (Ala. 2009); *see* Ala. Const. art. I § 14."); *Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1215 (M.D. Ala. 2000) ("The Supreme Court of Alabama has held that there is no authority that 'recognizes a private right of action for monetary damages based on violations of provisions of the Constitution of Alabama.'" (quoting *Matthews*, 787 So. 2d at 698)); *Tomberlin v. Clark*, 1 F.Supp.3d 1213, 1234 (N.D. Ala. 2014) ("These [due process and other] claims fail because the Alabama constitution does not create a private right of action to sue for monetary damages.").

Third, Plaintiff's claim for money damages under ARFA is barred by state-law immunity. In the Complaint, Plaintiff purports to bring claims against various state officials in their individual capacities. Doc. 1 ¶¶ 14-18. To the extent these are, in fact, individual capacity claims, these claims are barred by state-agent immunity. *See Ex parte Wilcox Cty. Bd. of Educ.*, 285 So. 3d 765, 778 (Ala. 2019); *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). However, under Alabama law, because Plaintiff's claims relate to duties that existed only because of Defendants' State positions, these claims are properly understood as official-capacity claims. *See Meadows v. Shaver*, --- So.3d ---, 2020 WL 6815066, at *3 (Ala. Nov. 20, 2020). And Article I, Section 14 of the Alabama Constitution provides immunity from suit against any state officer or employee when the action is, in reality, a lawsuit against the state. *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989); *see McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996); *Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1260 (M.D. Ala. 2007). Because, under Alabama law, Plaintiffs' claims against Defendants are official-capacity claims, those claims are barred by Section 14 of the Alabama Constitution. Nevertheless, even if the Court finds that Plaintiffs' claims are individual-capacity claims, the claims are barred by state agent immunity.

Fourth, even if Plaintiff could state a claim for relief under ARFA, this Court should decline to exercise supplemental jurisdiction over this State law claim. While Plaintiff asserts this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a), (doc. 1 ¶ 11), the Court is not obligated to exercise that jurisdiction, particularly here, where there is minimal guiding State authority. Beyond one dissent in the Alabama Supreme Court,[4] Alabama appellate courts have offered minimal interpretation of the contours of ARFA. When the Eleventh Circuit addressed ARFA in November 2020, the court even noted:

---

[4] *See Ex parte Snyder*, 929 So. 2d 447, 459-68 (Ala. 2005) (Parker, J. dissenting).

Before rushing headlong into that state-law briar patch, a word about the possibility of certifying this question to the Alabama Supreme Court: Certification, frankly, was our preference—so much so, in fact, that having raise the issue with the parties at oral argument, we directed them to filed supplemental briefs addressing the possibility. This, after all, strikes us as precisely the sort of question that a state court *should* definitively resolve: It is purely legal, it implicates fundamental constitutional and public-policy interests, and it is unsettled—as the district court observed, "there is little to no Alabama case law providing guidance on what [ARFA] means." Regrettably, though, we have concluded that the question doesn't satisfy the certification standard under Alabama Rule of Appellate Procedure.

*Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 837 (11th Cir. 2020). The fact remains that Alabama law says little about this issue, and a federal court's interpretation of ARFA could be overturned if the Alabama Supreme Court were to weigh in. As the Eleventh Circuit has noted, "Because state supreme courts are the final arbiters of state law, 'when we write to a state law issue, we write in faint and disappearing ink,' and 'once the state supreme court speaks the effect of anything we have written vanishes like the proverbial bat in daylight, only faster.'" *Le Frere v. Quezada*, 582 F.3d 1260, 1262 (11th Cir. 2009) (quoting *Sultenfuss v. Snow*, 35 F.3d 1494, 1504 (11th Cir. 1994) (Carnes, J., dissenting)). As a result, even if Plaintiff's ARFA claims were not clearly barred by *Pennhurst*, § 14 immunity, and failed to state a claim for money damages, the Court should decline to exercise supplemental jurisdiction over this claim.

## Conclusion

For the reasons stated above, the Court should dismiss all claims asserted against Defendants in Plaintiff's Complaint.

Respectfully submitted,

Steve Marshall,
  *Attorney General*

/s Brad A. Chynoweth
Brad A. Chynoweth
  *Assistant Chief Deputy Attorney General*
A. Reid Harris
Morgan B. Shelton
  *Assistant Attorneys General*

State of Alabama
Office of Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Brad.Chynoweth@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Morgan.Shelton@AlabamaAG.gov

**Counsel for Defendants**

27

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2021, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification to the following:

Lena F. Masri*
Gadeir I. Abbas*
Justin Sadowsky*
Ankur Sakaria**
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420
lmasri@cair.com
gabbas@cair.com
jsadowsky@cair.com
*Admitted Pro Hac Vice*
***Pro Hac Vice Application Pending*

Henry Brewster
HENRY BREWSTER, LLC
205 N. Conception Street
Mobile, AL 36603
(251) 338-0630
hbrewster@brewsterlaw.net

/s Brad A. Chynoweth
Counsel for Defendants

28