IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| YUSEF MAISONET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 21-0059-KD-MU |
| | ) | |
| JEFFERSON S. DUNN, etc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Defendants Jefferson S. Dunn, Steve Watson, Thomas Woodfin, Terry Rabon, and Chris Summers have filed a motion to dismiss all claims asserted against them in Plaintiff's complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that this Court lacks subject matter jurisdiction and/or Plaintiff's complaint fails to state a claim against Defendants. (Doc. 17). This motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72. Having reviewed and considered the relevant pleadings and briefs and the relevant law, the undersigned Magistrate Judge **RECOMMENDS** that Defendants' motion to dismiss Plaintiff Yusef Maisonet's complaint for lack of subject matter jurisdiction be **GRANTED** for the reasons set forth below.

## SUMMARY OF PROCEEDINGS

On February 4, 2021, Plaintiff Yusef Maisonet filed a complaint against Defendants alleging violations of the Establishment Clause and the Free Exercise Clause of the First Amendment, pursuant to 42 U.S.C. § 1983, and the Alabama

Religious Freedom Amendment. (Doc. 1). Defendants filed the instant motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state claim. (Doc. 17). Plaintiff filed a response in opposition to the motion to dismiss (Docs. 25), and Defendants filed a reply brief in response to Plaintiff's opposition (Doc. 26).

## SUMMARY OF ALLEGATIONS[1]

For purposes of determining subject matter jurisdiction, the relevant allegations are as follows:

Since about 2014, Maisonet, an Alabama Imam (religious leader), has ministered to the religious needs of Muslims on Alabama's death row. (Doc. 1 at ¶¶ 1-2). Part of that guidance is instructing and aiding the condemned with the Shahadah (the Islamic declaration of faith), which is part of Islam's rituals regarding last rites. (*Id.* at ¶¶ 46-48). Dominique Ray, an Alabama state inmate, was executed in 2019, and at that time, Alabama's policy provided that the only spiritual advisor allowed in the death chamber would be the Facility Chaplain employed at Holman Correctional Facility, the location of all executions in Alabama. (*Id.* at ¶¶ 19, 21-23, 39-45). The Facility Chaplain in 2019 was Defendant Chris Summers, a mainline Protestant Christian. (*Id.* at ¶ 22). Volunteer ministers from other religions, who were not employees of the Alabama Department of Corrections ("ADOC"), could provide religious services to inmates at Holman, but only the Facility Chaplain was allowed inside the execution chamber.[2] (*Id.* at ¶¶ 29-34). Maisonet provided spiritual guidance to Ray for five years

---

[1] For consideration of this motion to dismiss, Plaintiff's factual allegations have been accepted as true and viewed in the light most favorable to Plaintiff. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).
[2] The Eleventh Circuit noted in *Ray v. Comm'r, Ala. Dep't of Corr.,* 915 F.3d 689, 693 (11th Cir. 2019), that death penalty inmates can have designated witnesses, along with

2

prior to his execution. (*Id.* at ¶ 35). On January 23, 2019, Maisonet's request to accompany Dominique Ray into the execution chamber for Shahadah was denied. (*Id.* at ¶ 36).

Ray challenged the execution protocol prior to his execution. (*Id.* at ¶ 36). The Eleventh Circuit found this protocol unconstitutional under the Establishment Clause, but the Supreme Court dissolved the Eleventh Circuit's stay of execution. (*Id.* at ¶¶ 37-38, *Ray v. Comm'r ("Ray I")*, 915 F.3d 689, 695, 697 (11th Cir. 2019), *stay dissolved sub nom Dunn v. Ray ("Ray II")*, 139 S. Ct. 661, 661 (2019)). After Ray's execution, Alabama revised its execution protocol. (*Id.* at ¶ 7). The new execution protocol prohibited all religious advisors from the death chamber. (*Id.* at ¶¶ 7-8). Under the new policy, Maisonet was prevented from accompanying Nathaniel Woods, another Muslim, in the execution chamber during his execution on March 5, 2020. (*Id.* at ¶¶ 50, 68).

## **STANDARD OF REVIEW**

Defendants argue that Maisonet's complaint is due to be dismissed, pursuant to Rule 12(b)(1), because this Court lacks subject matter jurisdiction. Subject matter jurisdiction is a threshold inquiry that must be established before the Court can proceed to evaluate a plaintiff's claims on the merits. *See, e.g., Douglas v. United States*, 814 F.3d 1268, 1280-81 (11th Cir. 2016) (noting that "[f]ederal courts are courts of limited jurisdiction" and that, if a federal "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). "[T]he party invoking the court's jurisdiction must prove, by a preponderance of the evidence, facts supporting the

---

any spiritual advisor other than Chaplain Summers, seated in a witness room that is separated from the death chamber by a large window.

3

existence of jurisdiction." *Jory v. United States*, 562 F. App'x 926, 927 (11th Cir. 2014) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.,* 323 F.3d 920, 925 n.5 (11th Cir. 2003)). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint," and when considering a facial challenge, "the court must … take the complaint's allegations as true." *Id.*

## LEGAL ANALYSIS

Defendants assert that this Court lacks subject matter jurisdiction because Maisonet lacks standing to bring the claims alleged in his complaint. Constitutional standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish standing, a litigant ordinarily must assert his own legal rights and interests and cannot assert the rights or interests of someone else." *U.S. S.E.C. v. Quest Energy Mgmt. Group, Inc.*, 768 F.3d 1106, 1108–09 (11th Cir.2014) (citations and quotation marks omitted). "Because standing is not dispensed in gross, what matters is whether the plaintiff has suffered a concrete injury, not whether other parties have." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1001 (11th Cir. 2020) (citations and quotation marks omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180-81 (2000) (citing *Lujan,* 504 U.S. at 560–61); *see also Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1213–14 (11th Cir. 2019). The "plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005).

With regard to the first element of standing, Maisonet alleges that he has been injured by his inability to minister to Ray and Woods at the moment of their deaths. Quoting *McDaniel v. Paty,* 435 U.S. 618, 626 (1978), Maisonet argues that "[t]he right to the free exercise of religion unquestionable encompasses [his own rights] to preach, proselyte, and perform other similar religious functions." Defendants, however, aver that Maisonet has not suffered any legally cognizable injury in fact that could support Article III standing because a claim to redress any alleged constitutional injury could only be properly brought by an inmate, not by a prison minister. While acknowledging that, under *McDaniel,* ministers generally have the right to the free exercise of religion and that the free exercise of religion can include performing religious functions, Defendants note that the issue before the Court is more particularized; it is whether Maisonet had a constitutional right to minister to inmates in the execution chamber at the time of their execution. It is axiomatic that Maisonet cannot prove an injury in fact caused by a right that does not exist. *See O'Malley v. Brierley*, 477 F.2d 785, 793 (3d Cir. 1973).

In *O'Malley*, two Catholic priests, "suing in their own right," brought claims against state prison officials alleging that they had suffered injuries as a result of the deprivation of their First Amendment religious freedom right to conduct religious

services and offer religious counsel in a state prison. 477 F.2d at 788-89. The court, however, rejected their claim, finding that ministers do not have fundamental First Amendment rights to enter a prison and conduct religious services or counseling. *Id.* at 793; *see also McCollum v. California*, No. C 04-03339 CRB, 2006 WL 2263912, at *3 (N.D. Cal. Aug. 8, 2006) (affirming that "clerics do not have a First Amendment right to minister to prisoners"), *aff'd sub nom. McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870 (9th Cir. 2011). In *Jarrard v. Moats*, 2021 WL 1192948, *8 (N.D. Ga. Mar. 30, 2021), the court, citing *O'Malley* and *McCollum,* likewise found that the plaintiff minister had no constitutional right to perform baptisms in the jail.

This Court agrees with the holdings in *O'Malley*, *McCollum*, and *Jarrard,* and in so doing, concludes that Maisonet cannot meet the first element of standing – an injury in fact – with regard to his claims that his constitutional rights were abridged when his request to be present in the execution chamber with Ray and Woods was denied because he did not have a constitutional right to be present in the execution chamber itself.

Maisonet also lacks standing to assert claims for declaratory and injunctive relief because he has not alleged facts to establish that any future injury is likely to recur. "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999). "When a plaintiff seeks prospective relief to prevent a future injury," as Maisonet does here, he "must establish that the threatened injury is certainly

impending." *Indep. Party of Fla. v. Sec'y, State of Fla.*, 967 F.3d 1277, 1280 (11th Cir. 2020); s*ee also Clapper v. Amnesty Int'l*, 568 U.S. 398, 410 (2013) ("[A] threatened injury must be certainly impending to constitute injury in fact."). "[A]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. Nor is a "realistic threat," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499–500 (2009), an "objectively reasonable likelihood" of harm, *Clapper*, 568 U.S. at 410, or "a 'perhaps' or 'maybe' chance" of injury, *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000). Here, Maisonet alleges no facts to indicate that "the threatened injury is certainly impending." *Indep. Party of Fla.*, 967 F.3d at 1280. "[E]ven at the pleading stage, the 'litigant must clearly and specifically set forth facts' to satisfy the requirements of Article III." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924–25 (11th Cir. 2020) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Here, Maisonet's Complaint does not contain allegations to demonstrate sufficiently a concrete threat of future injury. The allegation that "ADOC will continue to enforce a policy of excluding religious advisors—including Imam Maisonet—from the execution chamber" (Doc. 1 at ¶ 56) is insufficient because the Court has already held that Maisonet does not have a constitutionally protected right to be present in the execution chamber and because there is no allegation, for example, that Maisonet plans to attend a specific execution or that any inmate desires to have Maisonet attend an execution. Although Maisonet alleges that he "remains committed to providing religious support and guidance to the Muslims on Alabama's death row" (Doc. 1 at ¶ 53), a commitment to religious support and guidance does not establish a certainly impending injury. The Court finds that Maisonet has not "specifically set forth facts" which show a real and immediate threat

of future injury. *Muransky*, 979 F.3d at 924. He certainly has not done so "with particularity." *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006).

To the extent Maisonet seeks injunctive relief or declaratory judgment for past conduct based on past protocols or restrictions, he also lacks standing. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *see also Malowney,* 193 F.3d at 1348 ("[A] declaration that the [challenged] statute as applied in the past to these plaintiffs is unconstitutional would [be] nothing more than a gratuitous comment without any force or effect.") (internal quotations and citation omitted). Allegations based only on past conduct cannot demonstrate a concrete or imminent injury sufficient to establish standing. *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that previously being subjected to illegal chokehold by police did not establish real and immediate threat of future injury that was required to establish standing for injunctive relief). Although the doctrine of mootness contains an exception for cases that are capable of repetition yet evading review, "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth,* 528 U.S. at 170.

"In addition to the three constitutional standing requirements, 'the Supreme Court has held that prudential requirements pose additional limitations on standing.'" *United States v. Blake*, 868 F.3d 960, 969 (11th Cir. 2017) (quoting *Wolff v. Cash 4*

*Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003)). "One of those prudential limitations is the rule that a litigant 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Here, Maisonet purports to allege a violation of his own First Amendment rights based on the allegation that he cannot accompany Muslim inmates into the execution chamber. As the chaplain in *McCollum*, his rights are clearly derivative of the constitutional rights held by third-party inmates—without inmates seeking his religious guidance, Maisonet would have no claim at all. *See McCollum v. California Dept. of Corr. and Rehab.*, 647 F.3d 870, 879 (9th Cir. 2011). As in *McCollum*, the third-party inmates on Alabama's death row could assert their own rights and, in fact, have done so in appeals all the way to the United States Supreme Court. "It is the inmates, not [Maisonet], who have standing to pursue the primary claim he articulated." *Id.* at 879. Accordingly, even if Maisonet could meet the requirements for Article III standing, he cannot satisfy the requirements for third-party standing, and therefore, has no standing to pursue his alleged claims for this reason, as well.

## **CONCLUSION**

As set forth above, the Court finds that Plaintiff Yusef Maisonet does not have standing to bring this action, and therefore, this Court does not have subject matter jurisdiction over this action. Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss (Doc. 17) be **GRANTED** and that this action be **DISMISSED.**

9

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **17th** day of **November, 2021**.

s/P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE